388 So.2d 271 (1980)
REGENCY HIGHLAND ASSOCIATES, a Florida General Partnership, Appellant,
v.
Lylian K. SHERWOOD, Appellee.
No. 79-2239.
District Court of Appeal of Florida, Fourth District.
August 27, 1980.
Rehearing Denied October 16, 1980.
Curtis G. Levine of Baskin & Sears, Boca Raton, for appellant.
John R. Tatum of Buck & Tatum, P.A., Fort Lauderdale, for appellee.
*272 HERSEY, Judge.
Regency Highland Associates, as developer and seller, entered into an agreement to sell a condominium unit to appellee. After payment of the earnest money deposit, appellant delivered a binder or commitment letter for title insurance to appellee, together with a proposed form of warranty deed and related closing documents. The title binder disclosed the existence of some twenty-seven claims of lien, five filed Notices of Lis Pendens, and seven existing lawsuits, all involving the real property in which the condominium unit was located. The title binder agreed to insure against loss from any of these exceptions (claims of lien, lis pendens and existing lawsuits).
Appellee refused to close the transaction and demanded return of her earnest money deposit. Appellant defended on the basis that the purchase and sale agreement provided that appellant would convey only an insurable title and since the binder agreed to insure over the exceptions, appellee was legally obligated to close the transaction, pay the balance of the purchase price and take title to the condominium unit. Litigation ensued and as a result appellee was granted a judgment for the return of her earnest money deposit with interest.
We affirm the judgment of the trial court.
Paragraph 7 of the purchase and sale agreement provides as follows:
7. TITLE. Seller will convey an insurable fee simple title of the condominium unit by Warranty Deed to Purchasers subject to the following exceptions:

A. Real estate taxes for the year of closing and subsequent years.
B. Applicable zoning regulations and ordinances.
C. All of the terms, provisions, conditions, rights, privileges, obligations, easements and liens as set forth and contained in the Declaration of Condominium, recorded in Official Records Book 2576 at Page 1342, Public Records of Palm Beach County, Florida, and the Articles of Incorporation and By-Laws of REGENCY HIGHLAND CONDOMINIUM ASSOCIATION, INC. and any Amendments thereto.
D. Any restrictions, reservations or easements of record. Seller will assign a perpetual exclusive use of the parking space described in Paragraph 1 above to Purchasers in accordance with the provisions of the Declaration of Condominium.
If the exceptions to title noted on the title insurance binder could be classified either as restrictions or reservations or easements then their existence would not justify avoidance of the contract. However, the trial court found that liens, notices of lis pendens and existing lawsuits do not fall within the enumerated categories. We agree. A restriction involves a limitation on the use of property. 7 G. Thompson, Real Property § 3160 (1962). Reservations are created for the benefit of a grantor out of the thing granted, causing something to exist that had no existence before the grant. City of Jacksonville v. Shaffer, 107 Fla. 367, 144 So. 888 (1932). An easement is a servitude carved out of the servient estate. 2 G. Thompson, Real Property § 315 (1980). And see Orange Blossom Hills, Inc. v. Kearsley, 299 So.2d 75 (Fla. 1st DCA 1974). None of these definitions contemplate liens, notices of lis pendens or existing litigation.
Appellant takes the position that it is nevertheless sufficient compliance with the contract if a title insurance company will insure the title, and thus the grantee of the warranty deed, against loss or damage occasioned by the enumerated exceptions. Whether that position is legally sound depends upon the language of the purchase and sale agreement.
Competent parties can agree to a purchase and sale of real property based solely on the seller's ability to convey an insurable title. In a proper case the buyer would be obliged to perform despite the existence of restrictions, reservations, easements, liens, notices of lis pendens or pending litigation. For example, in Van Arsdale v. Dimil Land Co., 325 So.2d 471 (Fla.4th DCA 1975), we held that the existence of a *273 reservation of mineral rights would not bar specific performance of a purchase and sale agreement requiring "titles to be insurable in the usual form subject to easements and restrictions common to the subdivision." However, in the earlier case of Kehl v. Miami Title & Abstract Co., 143 Fla. 9, 196 So. 610 (1940), the buyer under a contract requiring the seller to furnish an abstract showing his title to be "good and insurable" would not be required to take title where the title insurance company refused to insure against loss from litigation then pending. While obviously distinguishable, we think these precedents are persuasive.
The agreement involved in the instant case is ambiguous. The first part of paragraph 7, quoted previously, can be interpreted at least two ways. It may mean that the deed will be subject only to the four enumerated items and that the title will insurable. Under this interpretation appellant would be entitled to prevail because the deed tendered is subject only to the four enumerated items and a title insurance binder was produced insuring over the additional exceptions.
On the other hand, the language could as well mean that seller is to convey by warranty deed an insurable title and that title shall be subject only to the four items enumerated. In this event, appellee prevails because of the admitted existence of a myriad of other exceptions. Here it would be appropriate to say that the buyer intended to purchase a condominium unit, not a law suit.
We start with the proposition that the trial court's judgment comes to us clothed with a presumption of validity and correctness. Southeast Bank of Deerfield Beach v. Ralph C. Jackson Realty, Inc., 354 So.2d 1217 (Fla. 4th DCA 1978). The trial court here determined that mere insurability of the title was insufficient to satisfy the agreement.
In addition, appellant's attorney prepared this agreement. It is a familiar rule of construction that a contract will be interpreted most strongly against the party who selected the questionable language. Tannen v. Equitable Life Insurance Co. of Washington, D.C., 303 So.2d 352 (Fla. 3d DCA 1974). In this case the agreement, construed most strongly against appellant, requires us to conclude that the seller failed to tender a title in compliance with the requirements of its own provisions.
We therefore recognize the validity and enforceability of a purchase and sale agreement requiring only that seller tender "insurable" title rather than "good" or "marketable" or "merchantable" title. The intention to do so, however, must be clear and unequivocal in view of the consequences to the intended buyer.
Accordingly, we affirm the final judgment.
AFFIRMED.
LETTS, C.J., and BERANEK, J., concur.